IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| ROBERT LEE MARTIN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:19-CV-92-Z |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO GRANT RESPONDENT'S MOTION TO DISMISS and
TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS**

Before the Court is the *Petition for a Writ of Habeas Corpus by a Person in State Custody* filed by petitioner ROBERT LEE MARTIN. [ECF 3]. On November 8, 2019, respondent filed a motion to dismiss petitioner's habeas application. [ECF 20]. For the following reasons, respondent's motion to dismiss should be GRANTED, and petitioner's habeas application should be DISMISSED.

I.
PETITIONER'S CLAIMS

Petitioner was charged by Indictment in the 331st District Court of Travis County, Texas, with the offense of aggravated sexual assault. Specifically, it was alleged that on or about July 11, 1995, petitioner intentionally and knowingly committed the offense of sexual assault, but further alleged that said offense was aggravated because:

[I]n the course of the same criminal episode [petitioner] used and exhibited a deadly

weapon, to-wit: a knife, that in the manner of its use and intended use was capable of causing death or serious bodily injury.

Petitioner was tried before a jury. In the *Charge of the Court* to the jury during the guilt-innocence phase of the trial, the jury was instructed:

A person commits the offense of Aggravated Sexual Assault, if the person intentionally or knowingly:

(1) causes the penetration of the female sexual organ of another person by any means, without that person's consent;

(2) causes the penetration of the mouth of another person by the sexual organ of the defendant, without that person's consent; and if the person uses or exhibits a deadly weapon in the course of the same criminal episode.

Presumably because the use or exhibition of a deadly weapon was included in the definition of the aggravated sexual assault offense and was the only aggravating factor alleged, and because petitioner was not charged with the lesser included offense of sexual assault, the jury was not presented with the individual question of whether they found petitioner used or exhibited a deadly weapon during the commission of the sexual assault offense. Instead, the jury was simply provided an option of two (2) verdicts:

We, the jury, find the defendant, Robert Martin, guilty of the offense of Aggravated Sexual Assault as alleged in the indictment.

or

We, the jury, find the defendant, Robert Martin, not guilty.

During deliberations, the jury foreman sent the state trial judge a note advising that the jury was "in dispute as to whether a knife was exhibited or used in the sexual assault" of the victim, and requesting a portion of the testimony be read back to the jury. Thereafter, on June 6, 2001, the jury found petitioner guilty of the offense of aggravated sexual assault.

On June 7, 2001, after evidence was presented during the punishment phase of the trial, the

jury sentenced petitioner to confinement in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID) for life, and assessed him a $10,000 fine. *State v. Martin*, No. 955,530.[1]  In its *Judgment of Guilt by Jury* entered that same date, the state trial court recited the history of the case, including the jury's finding that petitioner was guilty of the offense of aggravated sexual assault as alleged in the Indictment and the jury's assessment of his punishment at confinement for life, and proceeded to adjudge petitioner guilty of the offense in accordance with the jury's verdict and pronounce petitioner's sentence.  [ECF 4 at 13-15].  In its form *Judgment on Jury Verdict of Guilty Punishment Fixed by Jury – No Probation Granted* entered the same date, the trial court summarily stated the jury found petitioner guilty of the first degree offense of aggravated sexual assault, but in the space provided for "Findings on Use of a Deadly Weapon" included:

> The jury further finds that a deadly weapon, to-wit:  a knife was used by the defendant in the commission of this offense.

[ECF 4 at 18].  The state trial court then summarily stated on the form the life sentence and fine assessed by the jury as punishment, and awarded petitioner time credited toward his sentence.

In the instant federal habeas application, in the section of the form inquiring as to what is being challenged, petitioner states, "Denied the use of ¼ sentence guidelines good time credits toward early parole interview."  Specifically, petitioner contends the trial court's inclusion of the affirmative deadly weapon finding in the *Judgment on Jury Verdict of Guilty Punishment Fixed by Jury – No Probation Granted* form was improper because "the jury did not make or authorize the trial court to enter" such a finding "during [the] punishment phase of trial."  [ECF 3 at 6].

---

[1]Seven (7) days later, on June 14, 2001, petitioner was convicted in Travis County of a May 7, 1995 aggravated sexual assault offense and an August 5, 1995 attempted aggravated sexual assault offense and assessed 15-year sentences of confinement in TDCJ-CID for each offense.  *State v. Martin*, Nos. 954,244 and 960,211.  On that same date, petitioner was also convicted in Travis County of a March 10, 1995 sexual assault offense and assessed a 10-year sentence of confinement in TDCJ-CID.  *State v. Martin*, No. 981,592.

Although arguing in a supporting memorandum that "[t]he trial court violated petitioner's due process rights by improperly entering findings on [the] use of a deadly weapon," [ECF 4 at 4], petitioner asserts he is not challenging his conviction by this federal habeas application. Instead, petitioner contends that as a result of this improper deadly weapon finding, the TDCJ-CID Classification and Records Department has erroneously classified petitioner as a 3g offender and, as a result, is erroneously requiring petitioner to serve, under Texas law, ½ of his sentence in calendar time, up to a maximum of 30 years, in order to acquire parole eligibility. Petitioner contends that without the improper deadly weapon finding by the trial court in one of its judgment forms, he would not be classified as a 3g offender and, consequently, would be eligible for parole, under Texas law, when his calendar time served + his good time earned = ¼ of his sentence. Petitioner thus argues he is challenging, in this federal habeas application, "his loss of good-time credits toward his early parole review," and contends the TDCJ-CID Classification and Records Department is violating his "protected liberty interest" and "entitlement to his good-time credits toward early parole" by erroneously calculating his time under the ½ sentence/flat time parole eligibility rule – what petitioner deems as "a parole issue."

In his habeas application, petitioner requests this Court grant the following relief:

I am asking the Court to reform or delete the entire finding that petitioner had used a deadly weapon during the commission of the offense and send a copy of the order to TDCJ-CID and Classification so they can compute his good-time credits toward his early parole interview under the ¼ sentence guidelines.

Petitioner's requested relief is reaffirmed in his memorandum.

II.
SUCCESSIVE PETITION

In 2008, petitioner filed a federal habeas petition in the United States District Court for the

Western District, Austin Division, challenging his underlying state conviction and sentence on numerous grounds. *See Martin v. Thaler*, No. 1:08-CV-732-SS (W.D. Tex. 2008) [ECF 20-1 at 7-23]. On November 6, 2009, the Austin Division court denied petitioner's federal habeas application on the merits. The United States Court of Appeals for the Fifth Circuit affirmed the denial, *Martin v. Thaler*, No. 09-51112 (5th Cir. 2010), and the United States Supreme Court denied a petition of certiorari to review the Fifth Circuit's affirmance. *Martin v. Thaler*, No. 10-6085 (S.Ct. 2010).

In 2018, petitioner filed a second federal habeas petition in the Western District challenging his sentence and/or "parole sentencing guidelines." *Martin v. Davis*, No. 1:18-CV-282-RP (W.D. Tex. 2018) [ECF 20-1 at 25-34].[2] In this second habeas application, petitioner asserted the "trial court abused its discretion by entering the affirmative finding of use of a deadly weapon in its judgment that was not authorized by the jury in the sentencing phase of the trial." [*Id.* at 30]. On April 4, 2018, the Austin Division court, construing petitioner's ground as a challenge to his conviction and sentence, determined petitioner could have raised his claim in his original federal application for habeas corpus relief and, therefore, his second application was successive. The Court, noting petitioner's failure to obtain prior approval from the Fifth Circuit to file a successive petition, dismissed the habeas application for want of jurisdiction. [ECF 20-1 at 36-37].

In her motion to dismiss, respondent argues the instant federal habeas application should be dismissed because this Court lacks subject matter jurisdiction. Respondent specifically takes issue with petitioner's assertion in his application "that his claim is challenging a parole issue," rather than his underlying conviction, and thus is not "subject to the successive petition bar."

---

[2]Petitioner requested permission from the Fifth Circuit to file a successive habeas application on two occasions. The Fifth Circuit denied both requests. *See In re Martin*, No. 11-50342 (5th Cir. 2011); *In re Martin*, No. 14-50181 (5th Cir. 2014).

Although acknowledging petitioner's "claim does affect his possible parole date," respondent argues the claim "is ultimately attacking the judgment in his conviction and could have been presented earlier." Respondent thus concludes petitioner's application "is a successive petition which the Court has no jurisdiction to review." [ECF 20 at 3].

Title 28 U.S.C. § 2244(b)(3)(A) provides that ***before*** a second or successive application permitted by section 2244(b)(2) is ***filed*** in the district court, "the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." Section 2244(b)(3)(A) creates a "gatekeeping" mechanism at the appellate court for the consideration of second or successive applications in the district courts. *Felker v. Turpin*, 518 U.S. 651, 657 (1996). It "transfers from the district court to the court of appeals a screening function which would previously have been performed by the district court." *Id.*

A petitioner may obtain permission to file a successive habeas petition with the district court only if he files, with the appropriate federal appellate court, a motion for authorization to file such a petition. *In re Epps*, 127 F.3d 364 (5th Cir. 1997) (detailing the procedure for obtaining authorization from the appellate court). The federal court of appeals may authorize the filing of a second or successive application for habeas relief only if it determines the application makes a prima facie showing that the application satisfies the requirements set forth in 28 U.S.C. § 2244(b)(2).

Section 2244(b)(2) permits a district court to consider a claim presented in a second or successive habeas application that was not presented in a prior application only if the claim: (1) "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;" or (2) is based on a factual predicate that "could not have been discovered previously through the exercise of due diligence" and which, "if proven

and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2244(b)(2).

The undersigned agrees with respondent that petitioner's claim, although characterized as either a claim of erroneous classification as a 3g offender and/or the improper denial of a parole interview, is, in fact, a challenge to his underlying state conviction.[3]  This third federal petition for habeas corpus relief is, therefore, successive.[4]  This Court is bound by the requirements of 28 U.S.C. § 2244(b)(3) and cannot consider the instant application for habeas corpus relief without an order from the United States Court of Appeals for the Fifth Circuit authorizing such consideration.  Petitioner has failed to demonstrate he has obtained such authorization to file the pending federal habeas corpus petition.

Because petitioner has failed to obtain the appropriate appellate court permission to file a successive federal habeas petition, this Court has no authority to consider his request for relief and is without jurisdiction to consider his habeas application.  In such circumstances, this Court, as a matter of course, transfers the habeas petition to the Fifth Circuit under 28 U.S.C. § 1631 as an unauthorized successive writ.  *Cf. United State v. Fulton*, 780 F.3d 683 (5th Cir. 2015); *In re Sepulvado*, 707 F.3d 550 (5th Cir. 2013); *In re Epps*, 127 F.3d 364, 365 (5th Cir. 1997).  However, as petitioner has twice been denied permission to file a successive writ and, more importantly as

---

[3]Although petitioner asserts he is not challenging his conviction in this federal habeas application, petitioner is specifically arguing the trial court's deadly weapon finding made in one of its June 7, 2001 judgments was improper.  Moreover, in his supporting memorandum [ECF 4] and in his July 5, 2019 Supplemental Brief [ECF 9], petitioner argues not only that the trial court violated his due process rights by improperly entering the affirmative deadly weapon finding in one of its judgments, but that the trial court also erred in failing to submit whether petitioner used a deadly weapon during the commission of the offense as a special issue to the jury and to instruct the jury accordingly, resulting in petitioner being denied the opportunity to present evidence or argument at trial on this issue.  Clearly, despite petitioner characterizing his claims as asserting "parole issues" and not challenging his conviction, petitioner is, in fact, asserting a direct challenge to his underlying judgment of conviction.

[4]Without setting forth the relevant timeline, the undersigned notes petitioner's complaints would also be time barred.

petitioner's claims are without merit (*see infra*), this Court should, instead, dismiss the instant application.

### III.
### CLAIMS ARE WITHOUT MERIT

The essence of petitioner's complaint is that as a result of the state trial court's deadly weapon finding in one of its judgments (which he argues was improper), the TDCJ-CID Classification and Records Department has erroneously classified petitioner as a 3g offender and, consequently, is erroneously requiring petitioner to serve ½ of his sentence in calendar time, up to a maximum of 30 years, in order to acquire parole eligibility. Petitioner contends that without the improper deadly weapon finding, he would not be classified as a 3g offender and, thus, would be eligible for parole when his calendar time served + his good time earned = ¼ of his sentence. Instead of addressing whether petitioner has even herein alleged a cognizable claim asserting a violation of a federal Constitutional right, whether a protected liberty interest necessary for federal habeas relief is even implicated in this situation, or whether the relief requested by petitioner concerns the invalidation of the duration of petitioner's confinement so as to fall within the purpose of federal habeas corpus relief, the undersigned instead finds petitioner is simply incorrect in his assertions and, due to the complete lack of merit of his claims, is attempting to present a frivolous ground.

At the time petitioner was sentenced on June 7, 2001, Texas law determining an inmate's eligibility for release on parole and the computation of an inmate's parole eligibility date stated, in relevant part:

> An inmate serving a sentence for an offense described by Section 3g(a)(1)(A), (C), (D), (E), (F), (G), or (H), Article 42.12, Code of Criminal Procedure, or for an offense for which the judgment contains an affirmative finding under Section 3g(a)(2) of that article, is not eligible for release on parole until the inmate's actual

calendar time served, without consideration of good conduct time, equals one-half of the sentence or 30 calendar years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calendar years.

Tex. Gov't Code § 508.145(d) (2001). Section 3g(a)(1) identified specific offenses for which an inmate might be sentenced. As relevant here, section 3g(a)(1)(E) described the offense of aggravated sexual assault under section 22.021 of the Texas Penal Code. Tex. Code Crim. P. art. 42.12 § 3g(a)(1)(E) (2001). On the other hand, section 3(g)(a)(2) applied to all felony offenses for which an inmate might be sentenced, but was only implicated when the judgment contained an affirmative finding that a deadly weapon, as defined by section 1.07 of the Texas Penal Code, was used or exhibited during the commission of the offense or during immediate flight therefrom, that the defendant used or exhibited the deadly weapon, or the defendant was a party to the offense and knew that a deadly weapon would be used or exhibited. The state law further provided:

> Except as provided by Section 508.146, any other inmate is eligible for release on parole when the inmate's actual calendar time served plus good conduct time equals one-fourth of the sentence imposed or 15 years, whichever is less.

Tex. Gov't Code § 508.145(f) (2001).

Petitioner is serving a sentence for the offense of aggravated sexual assault under section 22.021 of the Texas Penal Code, an offense specifically described by Section 3g(a)(1)(E), and is serving a sentence for an offense for which the judgment contains an affirmative deadly weapon finding under Section 3g(a)(2). Consequently, based both on the nature of the offense of which he was convicted and on the affirmative deadly weapon finding in the trial court's judgment, petitioner is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals ½ of his life sentence, or a maximum of 30 years. However, contrary to petitioner's argument, removing what he contends is the improper deadly weapon finding from his underlying state court judgment of conviction will not place petitioner

under the ¼ sentence/calendar time plus good time parole eligibility rule.  Instead, petitioner will still have to serve ½ of his life sentence in actual calendar time, or a maximum of 30 years, without consideration of good conduct time, before he is eligible for release on parole due solely to the nature of the offense itself of which he was convicted by the jury.  Petitioner's purported "parole issue" claims that he is being denied good time credit toward his early parole and that his parole eligibility is being improperly calculated solely as a result of the trial court's affirmative deadly weapon finding in the judgment, are totally without merit.  Consequently, a transfer to the Fifth Circuit for consideration of whether to grant petitioner permission to file a successive habeas application on this ground would be an exercise in futility.

IV.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner ROBERT LEE MARTIN be DISMISSED for want of jurisdiction.

V.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 19, 2019.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

HAB54/FCR/MARTIN-92.PRL-ELIG-NOMERIT:2